UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ELI LILLY AND COMPANY,<br><br>                                 Plaintiff,<br><br>v.<br><br>SENSORRX,<br><br>                                 Defendant. | Civil Action No. 1:19-cv-4550<br><br>**Jury Demand** |

## COMPLAINT

Plaintiff Eli Lilly and Company ("Lilly"), by and through its undersigned counsel, files this Complaint against Defendant SensorRx, Inc. ("SensorRx"), seeking various declaratory judgments and other relief, as set forth herein.

## NATURE OF THE ACTION

1. Plaintiff Lilly brings this action for various declaratory judgments as a result of threats and accusations by Defendant SensorRx relating to alleged trade secret misappropriation and breach of contract.

2. For about the last six months, SensorRx has accused Lilly of misappropriating purported trade secrets relating to a digital migraine tracking and management application or "app" marketed by SensorRx as MigrnX™. SensorRx has made these threats and allegations despite the fact that the purportedly trade secret material is not secret or confidential. MigrnX has been distributed by SensorRx to many people throughout the United States, MigrnX is publicly available for free download through multiple online stores, and MigrnX is used by doctors and patients through at least one healthcare system. Lilly, moreover, did not use any alleged trade

1

secrets relating to MigrnX in the design, development, or commercialization of any of its own products, including Lilly's own migraine management app, Vega™ Migraine.

3. Lilly hereby seeks declarations that it did not misappropriate any trade secrets of SensorRx under federal or state law and that Lilly did not breach a contract with SensorRx.

## PARTIES

4. Lilly is a corporation organized and existing under the laws of the state of Indiana, having its corporate offices and principal place of business at Lilly Corporate Center, Indianapolis, Indiana 46285.

5. Upon information and belief, Defendant is a corporation organized and existing under the laws of the state of Delaware, with its principal place of business at 227 West 4th Street, Charlotte, North Carolina 28202.

## JURISDICTION AND VENUE

6. This action arises under the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202, and the Defend Trade Secrets Act, 18 U.S.C. §§ 1836, *et seq*. ("DTSA").

7. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331, including because the action arises under the U.S. trade secret laws. This Court also has subject matter jurisdiction under 28 U.S.C. § 1332(a) because the amount in controversy exceeds the sum of $75,000, exclusive of costs and interest, and Lilly and SensorRx are citizens of different states. Lilly is a citizen of Indiana. SensorRx is a citizen of Delaware and North Carolina.

8. This Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over state law claims, including those involving declarations of no trade secret misappropriation under Indiana and North Carolina state law and no breach of contract.

9. This Court has specific personal jurisdiction over SensorRx, including because SensorRx's activities giving rise to this dispute occurred in this District.

10. For example, SensorRx signed the contract in question in Indianapolis, SensorRx attended multiple meetings with Lilly in Indianapolis during which SensorRx alleges to have shared purportedly trade secret information with Lilly, and SensorRx provided Lilly with its alleged trade secrets in Indianapolis and made its due diligence information available in Indianapolis. SensorRx also directed threats and allegations relating to alleged trade secrets to Lilly employees in Indianapolis.

11. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because, as explained above, a substantial part of the events giving rise to the claims asserted in this action and threatened by SensorRx occurred in this District.  In addition, alleged acts over which SensorRx has threatened litigation were conducted by Lilly in Indianapolis.

## FACTUAL BACKGROUND

12. Lilly has established an enterprise digital health program. As part of its digital health program, Lilly develops and/or integrates digital solutions that enable improved patient outcomes for customers in Lilly's targeted disease areas and/or specific customers of Lilly's drug products.  Lilly designed, developed, and recently released Vega Migraine, an app for supporting better management of migraines.

13. Lilly designed and developed, and created a commercialization plan for, Vega Migraine over the course of approximately two years, ultimately releasing it on the Apple App Store on November 5, 2019. As of the filing of this Complaint, Vega Migraine is available, on a limited basis, for free download through the Apple App Store.

14. The Vega program has and continues to leverage capabilities and experience that Lilly has gained from its many years of work in diabetes, including from Lilly's mobile app known as Go Dose, which is a diabetes management and insulin dosing app. Lilly's FDA 510k clearance is for prescription use, but it includes two versions of the app: Go Dose (for patients) and Go Dose Pro (for healthcare providers).

15. Vega Migraine is now one of over fifty migraine and related migraine management apps that are available to the public. For example, the Apple App Store alone has dozens of apps directed to tracking and managing migraines. There are also many other digital health apps directed toward tracking and managing other health conditions, such as diabetes or irritable bowel syndrome.

16. In addition to developing its own digital health products and services from the ground up, Lilly also regularly explores opportunities to partner with third parties, including by exploring potential business deals in digital health to complement Lilly's own efforts.

17. With regard to digital health, Lilly and SensorRx began having non-confidential discussions about MigrnX in or around mid to late 2018. During these discussions, SensorRx made several claims to Lilly about MigrnX's capabilities and inquired about Lilly's interest in working together. As part of its pitch effort, SensorRx also demonstrated its MigrnX app and encouraged Lilly to try it out.

18. To explore the possibility of a business deal further, representatives of Lilly and SensorRx met in person in San Francisco, California in early January. Lilly and SensorRx then met again in person in Indianapolis, Indiana on January 31, 2019. Representatives from SensorRx in attendance at the meeting in Indianapolis included Dr. George McLendon (SensorRx's CEO), Tripp Winn, Alex Dzeda, and Ed Kennedy.

19. At the meeting on January 31, 2019, Lilly and SensorRx entered into a Mutual Confidentiality Agreement ("MCA"). The MCA noted that Confidential Information does not include information that (i) "is already known to the Receiving Party at the time it is disclosed to the Receiving Party by the Disclosing Party," (ii) "is or becomes generally known to the public through no act or omission of the Receiving Party in violation of the terms of this Agreement," (iii) "has been lawfully received by the Receiving Party from a third party without restriction on its disclosure and without, to the knowledge of the Receiving Party, a breach by such third party of an obligation of confidentiality to the Disclosing Party," or (iv) "has been independently developed by the Receiving Party without use of or reference to the Confidential Information."

20. During the January 31 meeting, SensorRx gave a presentation on MigrnX and made several representations about MigrnX, including representations relating to its capabilities and corresponding patient data. Based on SensorRx's representations, Lilly decided to continue exploring these representations and whether there was a potential business opportunity with SensorRx.

21. In February and March 2019, Lilly and SensorRx continued pre-due diligence relating to MigrnX, which included an additional meeting in North Carolina and communications with SensorRx.

22. In or about April and May 2019, Lilly and SensorRx conducted a due diligence process. The diligence process included another in-person meeting at Lilly on or about May 9, 2019. Representatives from SensorRx present in Indianapolis included Dr. McLendon and Mr. Dzeda, and Mr. Winn joined by phone.

23. Throughout the due diligence, Lilly became increasingly concerned about SensorRx's representations with respect to MigrnX and whether it was in Lilly's interests to pursue a business deal with SensorRx.

24. Lilly's concerns were not resolved during the due diligence. To the contrary, Lilly concluded that SensorRx's representations to Lilly about MigrnX did not meet the level of quality or capability to justify further discussions or to move forward beyond diligence into a formal business relationship.

25. After Lilly decided not to continue with due diligence, Lilly instructed its due diligence team to cease use of due diligence materials provided by SensorRx during the due diligence process.

26. On or about May 28, 2019, Katie Hewitt, Vice President of Transactions for Lilly, informed Dr. McLendon that Lilly had decided to terminate the due diligence.

27. After the termination, SensorRx for the first time started making allegations and threats of trade secret misappropriation. For example, in an e-mail dated May 28, 2019, Dr. McLendon wrote to Ms. Hewitt, stating: "We will be sending a partial list of specific learnings which we believe were passed on in recent discussions that cannot be used for any independent commercial development and will monitor any ultimate product to insure that our proprietary learnings remain protected." On May 30, 2019, Dr. McLendon sent Ms. Hewitt and Mike Myers an e-mail asserting that there were "unauthorized" users within Lilly of confidential SensorRx information. Dr. McLendon then identified three alleged trade secrets relating to MigrnX—none of which were confidential or trade secret information.

28. Lilly disagreed with SensorRx's assertions.

29. Lilly and SensorRx exchanged several other communications in late May and early June, but then Lilly did not hear anything more from SensorRx over the next several months.

30. In the meantime, and throughout 2018 and 2019, Lilly had continued to move forward with Vega Migraine (a fact SensorRx was well aware of before the due diligence process began, and reminded of at the signing of the MCA and again at the start of due diligence). Accordingly, before, during, and after the due diligence period with SensorRx, Lilly's Vega team continued to work on completing Vega Migraine and preparing Vega Migraine for release.

31. At no point did Lilly use any alleged trade secrets of SensorRx in developing Vega Migraine. In fact, Lilly segregated the SensorRx due diligence work from the design and development of Vega Migraine.

32. Then, after several months of silence, counsel for SensorRx sent Lilly a letter on September 15, 2019, alleging that Lilly had misappropriated trade secrets of SensorRx in developing Vega Migraine.

33. For example, SensorRx alleged:

> We have learned that Eli Lilly is proceeding with marketing its product even though it incorporates SensorRx trade secrets and information covered by the MCA. By using fraud to develop its application, Eli Lilly has avoided paying SensorRx the substantial sums that would be due under the agreed-upon term sheet and will likely undermine SensorRx's ability to market MigrnX. Eli Lilly's conduct is a violation of North Carolina's Trade Secrets Protection Act, which will allow SensorRx to recover actual damages (measured by either SensorRx's economic loss or Eli Lilly's unjust enrichment), punitive damages, and attorneys' fees.

While SensorRx did not specify the alleged trade secrets in any detail, SensorRx continued to make threats and allegations suggesting that Lilly had somehow misappropriated trade secrets relating to MigrnX in developing Vega Migraine.

7

34. All of SensorRx's threats and allegations are baseless.

35. MigrnX and its features and content are not a trade secret. The app is available for free download on both Apple and Android platforms. It has also been used by at least one healthcare system in the care of its patients.

36. The technology identified by Dr. McLendon in his May 2019 e-mail is also publicly known, non-confidential information that cannot be a trade secret.

37. SensorRx has similarly not made reasonable efforts to keep MigrnX or information about MigrnX confidential. Rather, as mentioned, SensorRx publicly distributes MigrnX and makes MigrnX available online and through healthcare providers. In fact, in or about the fall of 2018, SensorRx's Co-founder, CEO, and Chairman of the Board—Dr. McLendon—helped a Lilly employee—Ms. Hewitt—download and access MigrnX. In addition, a television news program broadcast a story about MigrnX and announced an access code that viewers could use to download and try out the app. (*See* http://www.sensorrx.io/migrnx-on-wcnc-charlotte-abc-news/ (last visited November 13, 2019).)

38. Furthermore, Lilly did not use any SensorRx trade secret or confidential information in the design, development, or commercialization of Vega Migraine.

39. Accordingly, Lilly brings this action seeking a declaratory judgment that it has not misappropriated any SensorRx trade secret and not breached its agreement with SensorRx.

**COUNT I**
**(No Misappropriation of Trade Secrets**
**Under Federal Defend Trade Secrets Act, 18 U.S.C. § 1836)**

40. All of the preceding paragraphs, including all facts and allegations contained therein, are incorporated by reference as if fully set forth herein.

41. As set forth above, SensorRx has made allegations that Lilly misappropriated trade secrets of SensorRx, including, in particular, trade secrets relating to MigrnX.

42. SensorRx's allegations that Lilly misappropriated SensorRx trade secrets have no merit.

43. SensorRx cannot demonstrate that the relevant aspects of MigrnX are trade secret information. The MigrnX app is publicly available. The features and content of MigrnX at issue do not include any information that derives independent economic value, actual or potential, from not being generally known to and not being readily ascertainable through proper means by another person who can obtain economic value from the disclosure or use of the information.

44. SensorRx has not undertaken reasonable measures to keep the relevant features and content of MigrnX confidential. To the contrary, as explained above, MigrnX is publicly available and publicly distributed.

45. Furthermore, SensorRx's allegations that Lilly misappropriated trade secrets of SensorRx have no merit. As explained above, Lilly designed, developed, and commercialized Vega Migraine without the use of any confidential and/or trade secret information of SensorRx.

46. Lilly has a recognized interest that is adverse to SensorRx's allegations of misappropriation of trade secrets. Moreover, as explained above, SensorRx's threats and allegations have created a substantial dispute between the parties of sufficient immediacy and reality to warrant the issuance of declaratory judgment relief regarding whether Lilly misappropriated any trade secrets of SensorRx under the DTSA.

47. Plaintiff Lilly is therefore entitled to a judgment declaring that Lilly did not misappropriate any trade secrets of SensorRx under the DTSA.

## COUNT II
### (No Misappropriation of Trade Secrets Under Indiana State Law, IC § 24-2-3-2)

48. All of the preceding paragraphs, including all facts and allegations contained therein, are incorporated by reference as if fully set forth herein.

49. As set forth above, SensorRx has made allegations that Lilly misappropriated trade secrets of SensorRx, including, in particular, trade secrets relating to MigrnX.

50. SensorRx's allegations that Lilly misappropriated SensorRx trade secrets have no merit.

51. SensorRx cannot demonstrate that the relevant aspects of MigrnX are trade secret information. The MigrnX app is publicly available. The features and content of MigrnX at issue do not include any information that derives independent economic value, actual or potential, from not being generally known to and not being readily ascertainable through proper means by another person who can obtain economic value from the disclosure or use of the information.

52. SensorRx has not undertaken reasonable measures to keep the relevant features and content of MigrnX confidential. To the contrary, as explained above, MigrnX is publicly available and publicly distributed.

53. Furthermore, SensorRx's allegations that Lilly misappropriated trade secrets of SensorRx have no merit. As explained above, Lilly designed, developed, and commercialized Vega Migraine without the use of any confidential and/or trade secret information of SensorRx.

54. Lilly has a recognized interest that is adverse to SensorRx's allegations of misappropriation of trade secrets. Moreover, as explained above, SensorRx's threats and allegations have created a substantial dispute between the parties of sufficient immediacy and reality to warrant the issuance of declaratory judgment relief regarding whether Lilly misappropriated any trade secrets of SensorRx under IC § 24-2-3-2.

55. Plaintiff Lilly is therefore entitled to a judgment declaring that Lilly did not misappropriate any trade secrets of SensorRx under IC § 24-2-3-2.

**COUNT III**
**(No Misappropriation of Trade Secrets**
**Under North Carolina State Law, N.C. Gen. Stat. § 66-152, *et seq.*)**

56. All of the preceding paragraphs, including all facts and allegations contained therein, are incorporated by reference as if fully set forth herein.

57. As set forth above, SensorRx has made allegations that Lilly misappropriated trade secrets of SensorRx, including, in particular, trade secrets relating to MigrnX.

58. SensorRx's allegations that Lilly misappropriated SensorRx trade secrets have no merit.

59. SensorRx cannot demonstrate that the relevant aspects of MigrnX are trade secret information. The MigrnX app is publicly available. The features and content of MigrnX at issue do not include any information that derives independent economic value, actual or potential, from not being generally known to and not being readily ascertainable through independent development or reverse engineering by another person who can obtain economic value from the disclosure or use of the information.

60. SensorRx has not undertaken reasonable measures to keep the relevant features and content of MigrnX confidential. To the contrary, as explained above, MigrnX is publicly available and publicly distributed.

61. Furthermore, SensorRx's allegations that Lilly misappropriated trade secrets of SensorRx have no merit. As explained above, Lilly designed, developed, and commercialized Vega Migraine without the use of any confidential and/or trade secret information of SensorRx.

62. Lilly has a recognized interest that is adverse to SensorRx's allegations of misappropriation of trade secrets. Moreover, as explained above, SensorRx's threats and allegations have created a substantial dispute between the parties of sufficient immediacy and

reality to warrant the issuance of declaratory judgment relief regarding whether Lilly misappropriated any trade secrets of SensorRx under the under N.C. Gen. Stat. § 66-152.

63. Plaintiff Lilly is therefore entitled to a judgment declaring that Lilly did not misappropriate any trade secrets of SensorRx under N.C. Gen. Stat. § 66-152.

## COUNT IV
### (No Breach of Contract Under the MCA)

64. All of the preceding paragraphs, including all facts and allegations contained therein, are incorporated by reference as if fully set forth herein.

65. As explained above, Lilly did not use any confidential and/or trade secret information of SensorRx in the design, development, or commercialization of Vega Migraine.

66. Accordingly, Lilly did not breach any provisions of the MCA.

67. Lilly is therefore entitled to a judgment declaring that Lilly did not breach any provision of the MCA.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court:

A. Declare and enter judgment that Lilly did not misappropriate any trade secrets of SensorRx under the DTSA, Indiana trade secret law, North Carolina trade secret law, and/or any other applicable law;

B. Declare and enter judgment that Plaintiff Lilly did not breach any provision of the MCA;

C. Award Plaintiff Lilly its costs, attorneys' fees, and litigation expenses incurred in this action under any applicable basis; and

D. Award Plaintiff Lilly any other relief that the Court deems just and proper.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff Lilly hereby demands a trial by jury for all issues so triable that are raised herein or which hereinafter may be raised in this action.

                    Respectfully submitted,

Date: November 13, 2019        /s/ *Harmony Mappes*
                                      Harmony Mappes (#27237-49)
                                      Andrew McCoy (#28297-49)
                                      FAEGRE BAKER DANIELS LLP
                                      300 N. Meridian St., Suite 2500
                                      Indianapolis, IN 46204
                                      T. (317) 237-0300
                                      F. (317) 237-1000
                                      Harmony.Mappes@FaegreBD.com
                                      Andrew.McCoy@FaegreBD.com

                                      David J.F. Gross (*pro hac vice to be filed*)
                                      FAEGRE BAKER DANIELS LLP
                                      1950 University Avenue, Suite 450
                                      East Palo Alto, CA 94303
                                      T. (650) 324-6700
                                      F. (650) 324-6701
                                      David.Gross@FaegreBD.com

                                      Debbie Ellingboe (*pro hac vice to be filed*)
                                      Timothy E. Grimsrud (*pro hac vice to be filed*)
                                      Katherine S. Razavi (*pro hac vice to be filed*)
                                      FAEGRE BAKER DANIELS LLP
                                      2200 Wells Fargo Center
                                      90 S. Seventh Street
                                      Minneapolis, MN 55402
                                      T. (612) 766-7000
                                      F. (612) 766-1600
                                      Debbie.Ellingboe@FaegreBD.com
                                      Tim.Grimsrud@FaegreBD.com
                                      Kate.Razavi@FaegreBD.com

                                      *Counsel for Plaintiff Eli Lilly and Company*